I, GAUDIN, Judge.
This is an appeal by Evelyn Stanley, the plaintiff in this medical malpractice, following the trial judge’s involuntary dismissal of her claims against Dr. James R. Corcoran. We affirm.
This case went to trial on October 9, 1997 in the 24 th Judicial District Court. As a major part of her case, Stanley attempted to place into evidence the deposition video and transcript of her sole expert witness, Dr. David Femovich. After reviewing the video and transcript, the trial judge would not accept Dr. Femovich as an expert in general surgery. Dr. Corcoran then moved for an involuntary dismissal, which was granted.
Dr. Corcoran had removed a small rose thorn from one of Stanley’s fingers. The thorn had been in place for approximately a week before Stanley saw Dr. Corcoran and the finger had become infected. Subsequently, a so-called boutonniere deformity developed, which Stanley blamed on Dr. Cor-coran’s failure to provide adequate follow-up care.
On appeal, Stanley argues that Dr. Femo-vich was well qualified and should have been accepted as an expert and that, regardless, Dr. Corcoran’s negligence caused the boutonniere to develop.
Dr. Femovich, a plastic surgeon practicing in Pennsylvania, had done a residency in general surgery. He had failed the board exam twice and was no longer board eligible in general surgery. None of his practice now is in ^general surgery. Nonetheless, he said that he had performed “thousands” of general surgery procedures and now does at least one-third of his work on patients’ hands. It was clearly within the trial judge’s discretion to accept Dr. Femovich’s testimony and subject it to a credibility evaluation.
We have carefully considered Dr. Femovich’s deposition, which was proffered. Even if Dr. Femovich’s opinions had been accepted, there would have been insufficient persuasive evidence that Dr. Corcoran deviated from a standard of care in his treatment of Stanley’s infected finger.
When Dr. Corcoran first examined Stanley’s finger, he could feel a tiny foreign body and he could tell it was infected. After injecting a local anesthetic, Dr. Corcoran made a small incision and removed the rose thorn, actually the remnants of a thorn. The procedure took five minutes.
*1065 Dr. Corcoran advised Stanley to return in 48 hours or sooner if needed, but she did not return until more than two months later after the boutonniere had set in. A boutonniere is a mild deformity caused by a rupture of a tendon. Photographs of Stanley’s left hand, showing a swelling on her middle finger, are in evidence. Copies are attached to and made part of this opinion.
Dr. Femovieh said in his deposition that he would have placed Stanley under general anesthesia before removing the thorn. He would have made a larger incision so that he could have visualized all of the underlying structures. However, Dr. Femovieh said that while that is what he would | ¡¡have done, he could not say that what Dr. Corcoran did — -i.e., remove a small foreign body just beneath the skin surface — would not also have been done by “... many individuals in this community ...”
Stanley testified that Dr. Corcoran did not tell her to return in 48 hours. In any event, Dr. Corcoran testified that the infection itself, not any delay in follow-up treatment, caused the boutonniere although the deformity could “possibly” have been cured if treated earlier.
Dr. Corcoran’s testimony about telling Stanley to return in 48 hours or sooner is supported by a notation to this effect in the medical records. When Stanley did go back to Dr. Corcoran about two months after the thorn was removed, he referred her to an orthopedist but it was too late.
To prevail in a malpractice action of this type, a petitioner must prove a breach of standard follow-up medical care. Even with Dr. Femovich’s testimony, Stanley’s showing here fell short.
Stanley’s case would have been stronger had she been able to convince the trial judge that Dr. Corcoran had not told her to return within 48 hours or sooner. Apparently, her uncorroborated testimony on this point was disregarded along with Dr. Femovich’s video deposition.
AFFIRMED.
*1066 [[Image here]]